**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ST. ISIDORE RESEARCH, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **2:15-cv-01390-JRG-RSP** |
| | § | **Lead Case** |
| **COMERICA INCORPORATED, et al.** | § | |
| **Defendants.** | § | |

<u>**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>
<u>**PURSUANT TO PATENT RULE 4-5(B)**</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   LAW OF CLAIM CONSTRUCTION....................................................................... 1

   A.   Ordinary and Customary Meaning........................................................... 2

   B.   Intrinsic v. Extrinsic Evidence ............................................................... 2

   C.   Means Plus Function Claims ................................................................... 3

III.   CONSTRUCTION OF THE DISPUTED CLAIM TERMS ................................. 5

   A.   "Communications Link" ('360 patent) .................................................... 5

   B.   "Transaction" ('360 patent) ................................................................... 7

   C.   "Recognizes an Occurrence of an Event" / "Recognizing, by a Computer,
       an Occurrence of an Event" ('360 patent) ............................................. 10

   D.   "Transaction Processing Module" ('360 patent) / "A Processor Configured
       to Verify the Authenticity of the Account Access Request Based on the
       Response" ('271 patent)...................................................................... 13

       1.   "Transaction processing module" is subject to § 112(f). .......... 14

       2.   "A processor configured to verify the authenticity of the account
           access request based on the response" is subject to § 112(f). ................... 16

       3.   The "transaction processing module…, wherein the transaction
           processing  module: …determines the authenticity of the
           transaction based on the recognition  of the occurrence of the
           event" and "processor configured to verify…" limitations are
           indefinite................................................................................... 18

   E.   "Continues Processing the Transaction" / "Processing the Transaction
       " ('360 patent) .................................................................................... 20

   F.   "Incoming Information Associated With a Transaction" ('360 patent)................ 22

   G.   "Device" ('271 patent)........................................................................ 24

   H.   "Identifying / Identify a Second Device Associated With the Account"
       ('271 patent)....................................................................................... 26

   I.   "[Over a] Network" ('271 patent)......................................................... 28

J.    "A Processor Configured to Identify a Second Device Associated With the Account " ('271 patent)................................................................................... 29

IV.    CONCLUSION.................................................................................................... 30

DAL:940713.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ...................................................................................6

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ...................................................................17

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*,
334 F.3d 1294 (Fed. Cir. 2003) .......................................................2, 25, 26

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
815 F.3d 1314 (Fed. Cir. 2016) ........................................................... *passim*

*Indacon, Inc. v. Facebook, Inc.*,
No. 2015-1129, 2016 WL 3162043 (Fed. Cir. June 6, 2016) ............. *passim*

*Inventio AG v. ThyssenKrup Elevator Americas Corp.*,
649 F.3d 1350 (Fed. Cir. 2011) .............................................................17, 18

*Kraft Foods, Inc. v. Int'l Trading Co.*,
203 F.3d 1362 (Fed. Cir. 2000) ...................................................................12

*Lear Siegler, Inc. v. Aeroquip Corp.*,
733 F.2d 881 (Fed. Cir. 1984) .....................................................................24

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ......................................................... 20, 22, 28, 29

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) .............................................................17, 29

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ........................................................... *passim*

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................... *passim*

*Power–One, Inc. v. Artesyn Techs., Inc.*,
599 F.3d 1343 (Fed. Cir. 2010) .............................................................24, 26

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015) ....................................................................................3

*Williamson v. Citrix Online, LLC,*
   792 F.3d 1339 (Fed. Cir. 2015) (en banc)............................................................ *passim*

**Statutes**

35 U.S.C. § 112(b) ...................................................................................................... *passim*

35 U.S.C. § 112(f)....................................................................................................... *passim*

DAL:940713.1

## I.      INTRODUCTION

Defendants ZB, N.A. (f/k/a Amegy Bank, N.A.), LegacyTexas Bank, Southside Bancshares, Inc., Southside Bank, Texas Capital Bank, N.A., and Texas Capital Bancshares, Inc. (collectively, "Defendants") respectfully submit this brief in support of their proposed constructions of disputed terms and phrases in the asserted claims of United States Patent Nos. 7,904,360 ("the '360 patent") and 8,589,271 ("the '271 patent").    The '360 patent discloses a way to verify a transaction using two communications links to help ensure that the transaction is not fraudulent.  Similarly, the '271 patent purports to relate to fraud prevention and fraud warning notifications, particularly in remote or electronic transmissions where it is desirable to verify a party's identity before concluding the transaction and to provide notice that the transaction has occurred.  For a more detailed analysis of the technology in issue, Defendants refer the Court to their Technology Tutorial submitted on May 31, 2016.

To avoid actually defining the claim scope at issue, Plaintiff St. Isidore Research, LLC ("Plaintiff") urges "plain and ordinary" meaning for all terms except one.  But there are, in fact, disputes about the scope of the claims, and Defendants' proposed constructions resolve those disputes consistent with the intrinsic evidence (or lack thereof).

## II.     LAW OF CLAIM CONSTRUCTION

Defendants recognize that the Court is well-aware of the canons of claim construction and the controlling decision of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), which reaffirmed the primary importance of the specification and prosecution history in construing patent claims.  Defendants therefore limit this discussion to the particular legal principles of claim construction at issue in this dispute.

## A.      Ordinary and Customary Meaning

In cases where words have common meanings, a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008) (holding that where parties dispute the scope of an asserted patent claim, it is a question of law for the Court to decide).   That being said, the Court need not "attempt the impossible task of resolving all questions of meaning with absolute, univocal finality."   *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016).   The Court's duty is simply to resolve the parties' disputes about claim scope.   *Id.*

## B.      Intrinsic v. Extrinsic Evidence

Plaintiff's repeated reliance on online dictionaries is misplaced.   In *Phillips*, the Federal Circuit explicitly rejected the "dictionary first" approach to claim construction and affirmed the primacy of the intrinsic record as the guide for determining the intended meaning of claim language.   *Phillips*, 415 F.3d at 1318-19, 1320-21.   When dictionaries are consulted, they have to be contemporaneous to the patent.   *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) (finding dictionaries "not contemporaneous with the patent" "do not reflect the meanings that would have been attributed to the words in dispute by persons of ordinary skill in the art as of the grant of the . . . patent" and have no place in a proper claim construction analysis).

Moreover, Plaintiff's dependence on the proffered expert declaration of Dr. Traynor is also improper.   Dkt. 148-1.[1]   Although claims are interpreted from the perspective of a person of ordinary skill in the art, "experts cannot be used to prove the proper or legal construction of any instrument of writing."   *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).   Dr. Traynor's conjecture and conclusory statements that a person of ordinary skill would have understood certain claim terms to mean Plaintiff's construction are not proper evidence of how the disputed terms should actually be construed.   *See Phillips*, 415 F.3d at 1327 (identifying permissible extrinsic evidence as "relevant scientific principles, the meaning of technical terms, and the state of the art").

## C.      Means Plus Function Claims

Claims that do not include the word "means" are rebuttably presumed not to invoke 35 U.S.C. § 112(f), but Plaintiff's argument that this is a strong presumption is just wrong.   The Federal Circuit's decision in *Williamson v. Citrix Online, LLC* "expressly overrule[d] the characterization of that presumption as 'strong.'"   792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc).   The court further stated that no "heightened evidentiary showing" is required to rebut the presumption.   *Id.*

The relevant standard is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure."   *Id.*   To overcome the presumption, Defendants must demonstrate "that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"   *Id.*

---

[1] The Traynor declaration was untimely submitted in violation of the Local Patent Rules.  *See* Dkt. 154.

Importantly, words other than "means" can similarly indicate the claim language is functional and does not recite sufficient structure to avoid § 112(f).  For example, the claim term at issue in *Williamson* was "distributed learning ***module***."   The court explained,

> "Module" is a well-known nonce word that can operate as a substitute for 'means' in the context of § 112(f).  As the district court found, "module is simply a generic description for software or hardware that performs a specified function."  Generic terms such as "mechanism," "element," "device," and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they "typically do not connote sufficiently definite structure" and therefore may invoke § 112(f).

*Id.* at 1350.

Construing a claim under § 112(f) is a two-step process.  First, the court identifies the claimed function.  *Id.* at 1351.  Second, the court determines, "what structure, if any, disclosed in the specification corresponds to the claimed function."  *Id.*  "Where there are multiple claimed functions, as we have here, the patentee must disclose adequate corresponding structure to perform ***all of the claimed functions***."  *Id.* at 1351-52 (emphasis added).   If the specification does not disclose adequate corresponding structure, the claim is indefinite.  *Id.* at 1352.  Corresponding structure is adequate "if the intrinsic evidence clearly links or associates that structure to the function recited in the claim."  *Id.*  If the specification discloses that the claimed function is performed by a programmed general purpose computer, "the specification must disclose an algorithm for performing the claimed function."  *Id.*

### III.    CONSTRUCTION OF THE DISPUTED CLAIM TERMS

#### A.    "Communications Link" ('360 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|---|---|---|
| communications link | plain and ordinary meaning | "a medium that may operate on networks having near universal, worldwide availability and high reliability, such as World Wide Web, public switched telephone network (PSTN), wireless networks, Instate Messaging services, short message service (SMS) and other wireless text messaging, fax, paging, electronic mail, etc." |

Remarkably, the only claim term for which Plaintiff proposes a construction—"communications link"—is the one disputed term for which ordinary meaning was used by the patentee.  The specification and prosecution history of the '360 patent are both devoid of any explanation as to a unique meaning or usage of communications link.  By simply incorporating the term, the patentee indicated an intent that it be used as understood by a person of ordinary skill in the art at the time.

Plaintiff's newfound construction, however, is inconsistent with that understood plain and ordinary meaning.  Indeed, the only requirement of Plaintiff's construction is "a medium."   The remainder of the construction follows the permissive "may" or the exemplary "such as."   This is no construction at all.   Plaintiff's construction also misapplies the specification's exemplary teachings.  At the outset, the "near universal, worldwide availability and high reliability" language of Plaintiff's construction modifies "networks," not communications link, *see* '360 patent, 12:5-9, and the ambiguity of this language is entirely unhelpful for a jury.  Although Plaintiff cites other examples of what may constitute a communications link, it offers no explanation for why it chose certain examples for its construction and not others. *See id.* at 9:47-50, 12:5-9, 12:64-13:4.

On the other hand, Defendants' evidence establishes such plain and ordinary meaning to be a connection for transferring data or signals.  *See* Ex. A, <u>Microsoft Computer Dictionary</u>, Fifth Edition (2002), at 113; Ex. B, <u>Newton's Telecom Dictionary</u>, Seventeenth Edition (2001), at 162.  This simple, straightforward meaning is what a person of ordinary skill in the art at the time would understand the term to mean.

Plaintiff's invocation of carrier pigeons and smoke signals is a blatant attempt to misdirect the Court on the claim construction issues.  In fact, the parties do not dispute that the claims are limited to "computer implemented" systems and methods.  *E.g.*, '360 patent, 31:48-49, 33:50-51, 36:15-17.  Whether "communications link" as used by the '360 patent impacts the question of subject matter eligibility under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) is independent of what construction of the term is appropriate.  Neither side argued that claim construction was needed for the Court to resolve certain § 101 motions, and those motions were (and are) fully briefed and ripe for determination well before the parties engaged in claim construction exchanges.  This type of line-blurring is exactly what the Federal Circuit cautioned against as beyond the Court's task at claim construction.  *Eon*, 815 F.3d at 1319 (court "should not resolve questions that do not go to claim scope").  The intrinsic evidence does not indicate a special or defined meaning of "communications link" and, thus, the plain and ordinary meaning of the term is the warranted construction.  *Phillips*, 415 F.3d at 1312-13 (internal citations omitted).

## B.    "Transaction" ('360 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|----------------------|----------------------|
| transaction | an exchange of information between two parties that is distinct from logging into the system | no construction needed / plain and ordinary meaning |

The parties dispute the meaning of "transaction" in the context of the '360 patent and, thus, construction of the term is required.  *See Eon*, 815 F.3d at 1318; *O2 Micro*, 521 F.3d at 1362.  Defendants believe that, while a transaction may encompass commercial (*e.g.*, financial) and non-commercial (*e.g.*, emergency authorization) exchanges of information, the '360 patent distinguishes between those types of exchanges and a user logging into the claimed system to then perform such information exchanges.  In contrast, Plaintiff's construction is impermissibly broad enough to include every possible interaction or exchange of information, including the simple act of logging into the claimed system.

The intrinsic evidence shows that a transaction can be many things, but it cannot encompass simply logging into the claimed transaction processing system.  First, the specification distinguishes between a "transaction" and logging into the claimed system.  The '360 patent states:

> "Rule, Profile, Script, Communication Sequence Pattern, and Message Template Management
>
> ***Prior to first use of the preferred embodiment of the inventive system***, at least one entry is required in each of its various database views [FIG. 5-FIG. 8] (excluding the Group view), representing a default Rule Set, Party Profile, Communication Sequence Pattern, Action Script, and Message Template for ***at least one type of transaction and at least one party from one RTE*** [1]. Such data entry may be performed by an operator of the CS [2] through a means such as a web-browser-based interface, as shown in FIG. 1 [251: "User Web Client"] . . . .
>
> ***An authorized user may log into the inventive system and, upon being granted access thereby, may view data and log records related to his***

7

> ***account and edit his/her Profile*** and select from among predefined
> Communication Sequence Patterns.

'360 patent, 31:10-31 (emphasis added).   In other words, the '360 patent explicitly

distinguishes between logging into the claimed system through the User Web Client and

the transaction that is initiated by the Remote Traction Engine ("RTE").   Thus,

Defendants' construction is wholly consistent with the specification, including Plaintiff's

alleged support.   *See* Dkt. 148 at 10 (citing '360 patent, 3:35-37, 6:25-27).   Indeed,

Defendants' construction does not exclude any embodiments and, thus, is in complete

***agreement*** with Plaintiff's recognition that the exclusion of embodiments is "rarely, if

ever, correct."   *Id.* at 9-10.[2]

In addition, the asserted claims themselves confirm that "transaction" cannot be

expansively interpreted to include logging into the claimed system—otherwise, the

claims make no sense.   For example, claim 1 of the '360 patent is directed to a "system

for providing a transaction" that authenticates a transaction based on a verification

request and then "continues processing the transaction."   Under Plaintiff's broad reading

of "transaction," once a user is logged into the claimed system, the transaction is

complete and there is no need for the system to "continue[] processing the transaction" as

required by claim 1.   As such, Plaintiff's unlimited construction yields a nonsensical

result.

Plaintiff also misconstrues the portion of the specification related to emergency,

non-commercial transactions.   *See* Dkt. 148 at 10.   The '360 patent discloses that some

---

[2] To the extent there is any confusion, Defendants would be fine amending their construction to read "an
exchange of information between two parties ***or devices*** that is distinct from logging into the system"—
such a modification moots Plaintiff's imaginary concerns about excluding "nearly all of the embodiments
in the specification."  *See* Dkt. 148 at 10.

transactions, by their nature and their parties can "indicate[] an emergency situation, such as an authorization transaction (non-commercial in nature) regarding the entry by some party to a restricted or secured area or system." '360 patent, 28:11-15.  This passage, however, contemplates *emergency* situations warranting an "endless cycle of communication attempts ... such that the inventive system will attempt to establish contact with a party indefinitely, until successful." *Id.*  This disclosure makes no sense if read to cover logging onto the "inventive system" itself.  Any user requesting access to that system would be expected to respond as part of the requested access.  This part of the specification, therefore, can only be referring to emergency access to restricted or secured areas or systems that are not the claimed system, and cannot be twisted to encompass the regular occurrence of a user logging in to the user's own account system.

Plaintiff also omits the '360 patent's unambiguous teaching that, in the context of commercial transactions, "passwords and ID codes" (*i.e.*, information typically associated with the logging into a system) are a weakness and limitation of the prior art and "are not commonly used, supported and enforced by merchants for credit card purchases." '360 patent, 6:34-53.  Tellingly, Plaintiff does not provide any argument that the '360 patent teaches that the opposite would be true for non-commercial transactions as discussed in column 28 of the '360 patent—because there is no such support.

Plaintiff's alternative construction fails to resolve the dispute over whether a "transaction," in the context of the '360 patent, can include simply logging into the claimed system.  Given Plaintiff's primary position of no construction necessary and its litigation positions to date (*e.g.*, complaint allegations), it is clear Plaintiff intends to argue that a transaction can include logging into, for example, an online banking system.

9

But that is wholly inconsistent with the claims, which require continued processing after the authenticating step, and the specification, which distinguishes logging into the claimed system (not a transaction) from, for example, executing a balance transfer (a transaction).

C.   **"Recognizes an Occurrence of an Event" / "Recognizing, by a Computer, an Occurrence of an Event" ('360 patent)**

| Term | Defendants' Proposal | Plaintiff's Proposal |
|---|---|---|
| recognizes an occurrence of an event / recognizing, by a computer, an occurrence of an event | recognizes, via the second communication link(s), the result of the verification request | no construction needed / plain and ordinary meaning |

The parties dispute the meaning of "recognizes the occurrence of an event"/"recognizing, by a computer, an occurrence of an event" in the context of the '360 patent and, thus, construction of the term is required. *See Eon*, 815 F.3d at 1318; *O2 Micro*, 521 F.3d at 1362.

Defendants' construction accurately reflects the ***only*** disclosed manner in which the claimed transaction processing module "recognizes the occurrence of an event"—via the second communications link or links. *See, e.g.*, '360 patent, Fig. 3; 12:41-46. The specification describes the parties who are sent verification requests as being in "Confirm" roles. *See, e.g.*, *id.* at 22:7-22, Fig. 25. Parties in "Confirm" roles provide input via the individual communication device by which they were contacted. *See id.* at 12:41-44 ("A confirming action or actions may be performed by said party via said communications link, using a means appropriate to his/her corresponding communications device."). Notably, "[t]he form of input depends on the nature of the communication device and medium." *Id.* at 26:42-43. The only reason why the form of this responsive input would depend on the nature of the communication device and medium would be if the responsive input was also performed via the secondary

communication channel, which is consistent with all figures.  *E.g.*, '360 patent, Fig. 3. Indeed, the purported benefit of requiring responsive input via the second communications link is that, in the case of a fraudulent transaction performed over the first communications link, "the fraudulent owner/user will be physically unable to authenticate him/herself ***using the communications device found at said communications address***." *Id.* at 11:7-17 (emphasis added).

Defendants are not reading limitations from the specification into the claims. Rather, as instructed by *Phillips*, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." 415 F.3d at 1313.  In the '360 patent, the entirety of the specification discloses that the recognition of the occurrence of an event is accomplished with a secondary communication link or links, and a person of ordinary skill in the art would read the claim in this context.

Moreover, Plaintiff erroneously argues that Defendants' construction excludes most embodiments disclosed in the specification.  Taking each cited example in turn, Defendants' proposed construction encompasses dependent claims 11 and 42, because an "absence of a response, via the one or more second communications links" means that the result of the verification request—an absence of a response within a predetermined time period—was recognized via the second communications link.  *See* Dkt. 148 at 11. Second, Defendants' construction also encompasses "allow[ing] said communications to occur over a plurality of communications media and/or communications links" as Defendants' construction supports each one of these communications media and/or communications links being a secondary communication link.  *See id.* (citing '360 patent,

8:48–52); *see also id.* at Fig. 3 (various communication links 511-525+).   Third, Defendants' construction reflects the specification at 21:54-62 for the same reason—each communication link disclosed is a secondary link to a party of interest.  *See* Dkt. 148 at 12.

Finally, Defendants' proposed construction does not run afoul of the doctrine of claim differentiation.  The presumption of claim differentiation "does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ."  *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (citation omitted).  As the Federal Circuit recently reiterated, "[a]lthough claim differentiation is a useful analytic tool, it cannot enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." *Indacon, Inc. v. Facebook, Inc.*, No. 2015-1129, 2016 WL 3162043, at *4 (Fed. Cir. June 6, 2016) (internal quotations omitted).

For example, claim 11 recites two distinct limitations: (1) the occurrence of the event comprises an absence of a response that occurs within a predetermined time period; and (2) the absence of a response is via the one or more second communications links. *See* '360 patent, 32:28-31.  Because the intrinsic evidence makes clear that any result of a verification request is recognized via the second communications link or links, the limitation of dependent claim 11 that is distinguished from claim 1 is that the absence of a response occurs within a predetermined time period.  Likewise, the relevant limitation of dependent claim 12 that is distinguished from claim 1 is that responsive communication occurs within a predetermined time period—not that the response is "via

the one or more second communications links." *Id.* at 32:32-36.  In each of claims 11 and 42 and claims 12 and 43, there is at least one limitation that is different than in claim 1 and, as such, claim differentiation is inapplicable here.

> **D.    "Transaction Processing Module" ('360 patent)/"A Processor Configured to Verify the Authenticity of the Account Access Request Based on the Response" ('271 patent)**

| Term | Defendants' Proposal | Plaintiff's Proposal |
|---|---|---|
| transaction processing module | 35 U.S.C. § 112 (f)<br><br>Function:<br>receives, via the first communications link, incoming information associated with a transaction;<br><br>identifies at least one party associated with the transaction, wherein the at least one party is authorized to verify the transaction and is a non-merchant with respect to the transaction;<br><br>transmits, via the one or more second communications links, a verification request to the at least one party to verify the transaction, wherein the one or more second communications links are different from the first communications link;<br><br>recognizes an occurrence of an event;<br><br>determines authenticity of the transaction based on the recognition of the occurrence of the event; and<br><br>continues processing the transaction initiated over the first communications link<br><br>Structure:<br>The "determines authenticity of the transaction based on the recognition of the occurrence of the event" function is indefinite under 35 U.S.C. § 112(b). | No construction needed / plain and ordinary meaning.<br><br>Alternatively, to the extent it requires a construction:<br><br>hardware and/or software component that processes a transaction, such as a web e commerce server, banking transaction system, or credit card authorization or risk assessment system or device<br><br>Alternatively, to the extent it requires a construction and if the Court construes it as a means-plus-function term:<br><br>Function:<br><br>Processes a transaction and communicates via a first communications link and one or more second communications links<br><br>Structure:<br>Hardware and/or software component that includes a remote transaction engine, such as a web e-commerce server, banking transaction system, or credit card authorization or risk assessment system or device. |
| a processor configured to verify the authenticity of the account | 35 U.S.C. § 112(f)<br><br>Function:<br>verify the authenticity of the account access request based on the response | no construction needed / plain and ordinary meaning |

| access request based on the response | Structure:<br>indefinite under 35 U.S.C. § 112(b) | |
|---|---|---|

These two terms are subject to § 112(f), and both terms are indefinite because the specification fails to recite adequate corresponding structure for the claimed function.  In particular, the specification does not disclose any algorithm for "determining the authenticity of the transaction based on the recognition of the occurrence of the event" or "verify[ing] the authenticity of the account access request based on the response."  Rather, the specification simply discloses that the claimed system or method checks to see whether a user's input is required, but does not explain how the authenticity is determined based on that received input.

### 1.     "Transaction processing module" is subject to § 112(f).

The specification does not use the term "transaction processing module," and the intrinsic record does not suggest that the term is the name for structure.  In fact, the term's complete lack of structure is confirmed by Plaintiff's own brief.  Plaintiff erroneously argues that the term "transaction processing module" does not require a construction because its meaning is clear from the *functions* recited by the claims themselves.  For example Plaintiff argues that the term is readily understood because the claimed transaction processing module performs the functions of processing a transaction and communicating via communication links, which further include five additional functions: (1) "receiving incoming transaction information," (2) "identifying a party to the transaction," (3) "transmitting a verification request," (4) "recognizing the occurrence of an event," and (5) "continuing the processing of the transaction."  Dkt. 148 at 14.  But whether "transaction processing module" can be understood in terms of the functions it

performs is not the test.  The test is whether the claim recites a structure, and Plaintiff identifies no such structure in the claims themselves.

Alternatively, Plaintiff argues that "transaction processing module" should be construed as "hardware and/or software that processes a transaction."  Dkt. 148 at 14. This is the same phrasing the *Williamson* court used to illustrate when the word "module" failed to recite adequate structure: "'module' is simply a generic description for software or hardware that performs a specified function."  792 F.3d at 1350 ("[T]he word 'module' does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term "means" had been used.").  The adjacent words of the claim in *Williamson*, "'distributed learning control' do[] not import structure to the term 'module.'  These words do not describe a sufficiently definite structure."  *Id.*   The core problem for the court was that "nothing in the specification or prosecution history [lead the court] to construe that expression as the name of a sufficiently definite structure as to take the overall claim limitation out of the ambit of § 112(f)."  *Id.*   Like *Williamson*, the claims of the '360 patent recite the nonce word "module" to claim a black box that performs a number of transaction processing functions recited by the claim.

In addition, Plaintiff's proposed non-limiting examples of hardware and/or software components—"such as a web e-commerce server, banking transaction system, or credit card authorization or risk assessment system or device"—cannot be construed to import any structure into the claim.  These are examples of a remote transaction engine ("RTE"), but the RTE does not perform ***any*** of the functions recited by claim 1.  Rather, the specification teaches that RTE initiates the transaction by communicating with the

15

Central System over a first communication link, '360 patent, 15:4-10, and the Central

System is then responsible for communicating over a second communication link and

performing each of the "transaction processing module" functions recited by the claims.

*See, e.g.*, '360 patent, 11:59-13:13.  Moreover, the specification clearly teaches that the

disclosure of the RTE does not impose any structural limits on the claims:

> The **sole** requirement of the RTE [1] is to be able to provide
> a data message via an application programming interface
> [11] ("API") means, predefined specification means, or
> other equivalent means to the Central System [2] ("CS") of
> the embodiment of the invention, via any one of several
> standard communications protocols over a communication
> link or network [31].

'360 patent, 15:4-10 (emphasis added).  The specification's disclosure of the RTE cannot

provide any structure for construing the claimed transaction processing module.

The term "transaction processing module" uses the word "module" to generally

refer to any hardware or software for performing the various claimed transaction

processing functions and does not reasonably convey any specific structure to anyone.

Section 112(f) therefore applies.

> ## 2.    "A processor configured to verify the authenticity of the account access request based on the response" is subject to § 112(f).

The claimed "processor configured to verify the authenticity of the account access

request based on the response" also fails to communicate a sufficiently definite meaning

as the name for a structure.  Like "transaction processing module," the patentee used

"processor configured to" to denote any combination of hardware and/or software for

performing the recited verifying function.  A generic computer processor by itself cannot

recite structure adequate to avoid § 112(f) "because of the wide variety of types and

classes of computers in existence, each being configurable in a variety of different ways

using many different programming languages." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008) (concluding that recitation of "bank computer" was not sufficient to avoid application of § 112(f)). "The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (concluding that disclosure of "any standard microprocessor base [sic] gaming machine [with] appropriate programming" was insufficient structure to avoid pure functional claiming).

Here, claim 19's recitation of a "processor configured to" amounts to pure functional claiming. The claim itself places no limit on the physical structure of the processor, or its relation to any other component of the claimed "system for authenticating a device." In addition, the specification does not provide any support for a construction of "a processor configured to verify…" that includes any specific structure. For example, the '271 patent explains that the Central System includes one or more processors, memories and data storage, software, an operating system, and a database. '271 patent, 16:1-21. In short, the Central System is a generic computer, and the specification provides no indication of how the "processor configured to verify…" relates structurally to, or communicates with, the other computer components in the Central System.

In this way, the claimed "processor configured to verify…" is different from the "computing unit" found to avoid § 112(f) in *Inventio AG v. ThyssenKrup Elevator Americas Corp.*, 649 F.3d 1350 (Fed. Cir. 2011). To begin, *Inventio* applied the "strong

presumption" against the application of § 112(f) that *Williamson* expressly overruled. *See Inventio*, 649 F.3d at 1358. In addition, the structure of the computing unit at issue was specified in the claims by its structural relationships to other components of the claimed system. *Id.*

Because the claims and specification of the '271 patent recite no such structural relationships, the "processor configured to verify…" limitation does not limit the combinations of hardware and software for performing the claimed function, and § 112(f) applies.

3. **The "transaction processing module…, wherein the transaction processing module: …determines the authenticity of the transaction based on the recognition of the occurrence of the event" and "processor configured to verify…" limitations are indefinite**.

These limitations are indefinite because the specification does not disclose adequate corresponding structure for these functions. At the outset, claim 1 of the '360 patent recites a series of functions performed by the claimed transaction processing module, including "determines authenticity of the transaction based on the recognition of the occurrence of the event." Accordingly, the specification must disclose adequate corresponding structure for this limitation. *Williamson*, 792 F.3d at 1351-52. And because this function of claim 1 of the '360 patent is very similar to the "verify the authenticity of the account access request based on the response" in claim 19 of the '271 patent, the same portions of the specification are relevant to both claim limitations.

As discussed above, these functions of determining or verifying authenticity are performed by the Central System. *E.g.*, '360 patent, 11:59-13:13. And the Central System is simply a generic computer with generic computer components. '360 patent, 15:40-60; '271 patent, 16:1-21. Because the specification does not disclose the required

18

algorithm for performing the determining and verifying authenticity functions, the claims are invalid.

The specification explains that parties to a transaction that are in a Confirm role are required to provide an input to authenticate the transaction.  '360 patent, 12:41-44, 22:7-22.  But the specification only describes how the system determines whether an input is required and how an input is received.  '360 patent, 22:7-10, 26:38-27:8.  And the function of receiving the input at the system is required by other limitations of the claims, *i.e.*, "recognizes the occurrence of an event" ('360 patent, claim 1) and "a sever configured to receive, over a network, a response related to the verification message" ('271 patent, claim 19).  This disclosure therefore cannot be the required corresponding algorithm for the determining and verifying authenticity functions.

Moreover, the specification does not include any disclosure of what the system does with the input or how the input is used to verify the transaction.  This failure of disclosure is illustrated by Figure 25 of the '360 patent, which shows that the system determines whether an input is required in Box H and then gets and stores the input in Box I:



But Figure 25 does not include any reference to using the input to authenticate a transaction or a device and the corresponding text does not include an algorithm setting forth how this is done.  The claims therefore lack the corresponding structure required by § 112(f) and are invalid as indefinite under § 112(b).

19

### E. "Continues Processing the Transaction" / "Processing the Transaction" ('360 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|----------------------|----------------------|
| continues processing the transaction / processing the transaction | indefinite under 35 U.S.C. § 112 (b) | no construction needed / plain and ordinary meaning |

The '360 patent does not disclose any information that would allow a POSITA to understand the scope of "continues processing the transaction"/"processing the transaction" ("processing terms"). Because the '360 patent provides *no* information supporting these claim terms they are indefinite under any proposed construction.[3] *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (stating that a patent must "inform, with reasonable certainty, those skilled in the art about the scope of the invention"). Moreover, these terms use words that are highly non-descriptive and generic and do not provide any inherent limitations on their scope. *Phillips*, 415 F.3d at 1313 (Fed. Cir. 2005) ("The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation.").

The specification generally teaches that once a transaction is initiated at the RTE, the Central System verifies and/or authenticates the parties and the transaction, and sends the results of this process back to the RTE so that the RTE can either continue with the transaction or not. *See generally* '360 patent, 10:50-11:6, 11:59-12:59, 14:56-15:12. And all of the functionality related to the Central System and its links to the RTE and the communications devices relates to this authentication and verification, not the underlying

---

[3] Plaintiff argues that the '360 patent provides "numerous" disclosures supporting these terms. Dkt. 148 at 23. However, Plaintiff does not cite to any specific description for "processing" a transaction. In fact, Plaintiff only cites to *two* sections of the specification and argues that the system or device for processing could be a "banking transaction system or credit card authorization or risk assessment system" or a "web e-commerce server." '360 patent, 8:31-38, 14:56-59.  But these sections describe the RTE, and the '360 patent does not provide any description of how these systems or devices actually "process" the transaction.

transaction itself.  *E.g.*, *id.* at 17:24-32, 22:7-22 (explaining that Transaction Object is constructed from Transaction Message and that processing of Transaction Object ends when "Confirm" result is communicated back to RTE).  Thus, in the context of the first and second communications links to the central system, the specification does not provide any indication of what processing the transaction means.  And as discussed above with respect to the meaning of transaction, if the term is so broad as to include logging into the claimed system, "processing" the transaction after authentication and verification have occurred does not make any sense.

Indeed, the dependent claims further illustrate the indefinite nature of these terms. Asserted dependent claims 11 and 42 claim that the occurrence of the event comprises "an absence of a response, via the one or more second communication links, within a predetermined period of time."  But in the situation where there is no authentication of the transaction based on the lack of recognition of the occurrence of the event within a set period of time, the patent's complete silence regarding processing the transaction is glaring—how does the system "process" the transaction after it was not authenticated? The patent does not say.  Nor does Dr. Traynor, who improperly attempts to blur "processing" with the prior claim limitation of authenticating the transaction, and does nothing to establish that the patent discloses what "processing" means.  Dkt. 148-1 at ¶ 29 (citing same passages of the '360 patent as discussed in n. 4).

Plaintiff asserts that both the processing terms and the independent term "transaction" must be construed using their plain and ordinary meaning. But the combined effect of Plaintiff's broad constructions is a meaningless claim limitation with no discernible scope.  According to Plaintiff, the processing terms should be construed

21

as: doing "a series of actions that produce something or that lead to a particular result" in the context of  "an exchange or interaction between two parties or devices." Dkt. 148-14 (Merriam Webster Definition of Process); Dkt. 148 at 13. On its face, doing **something**, in **some way**, which leads to **some result** during the interaction between two parties provides no meaningful limit on the processing terms' scope, and, thus, these terms are indefinite. *Nautilus*, 134 S. Ct. at 2124.

### F.    "Incoming Information Associated With a Transaction" ('360 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|---|---|---|
| incoming information associated with a transaction | "a message including at least data fields to: 1) identify one or more parties 2) identify the type of transaction, and 3) identify the prices or amount of the transaction" | no construction needed / plain and ordinary meaning |

The parties dispute the meaning of "incoming information associated with a transaction" in the context of the '360 patent and, thus, construction of the term is required.  *See Eon*, 815 F.3d at 1318; *O2 Micro*, 521 F.3d at 1362.   Defendants' construction is taken nearly verbatim from the '360 patent's specification.  In contrast, Plaintiff's construction ignores the same, unambiguous intrinsic evidence and the patentee's lexicography.

While Defendants do not dispute that the individual words of this term are common, the inventor imparted a specific, unique meaning to the term in the '360 patent that governs here:

> The minimum necessary contents of said Transaction Message are shown in FIG. 2. The choice of minimum necessary contents may vary from embodiment to embodiment of the inventive system. These data fields and values 1) identify the transaction-originating entity [21 *a*], 2) provide a mechanism to authenticate it [21 *b*], 3) identify one or more parties having a potential interest in, involved in, and/or represented to be involved in, the transaction [22 *a*, ff., 22 *b*, ff.], 4) identify the type of transaction [22 *c*], such as a credit card purchase with card-not-present, *and* 5) identify the price or amount of the transaction [22 *d*] if applicable. . . .

22

Additional data fields and values may be supplied in the Transaction Message….

'360 patent, 15:61-16:4 (emphasis added); *see also id.* at Fig. 2.[4]

The '360 patent contemplates that "[a]dditional data fields and values may be supplied in the Transaction Message" that are in addition to the minimum necessary contents, but in no embodiment or teaching does the Transaction Message have ***less than*** the minimum necessary contents.  *See id.* at 16:8-9.  Said differently, the "incoming information associated with a transaction" can include many things but it ***must*** include the "minimum necessary contents," which are reflected in Defendants' construction (*i.e.*, 1) identify one or more parties, 2) identify the type of transaction, and 3) identify the price or amount of the transaction).  Importantly, the word "and" at 16:3 indicates that the third field value, the price or amount of the transaction, is required, even if the value of that field is $0.00, such as in a non-commercial transaction.  *See id.*  Figure 2 illustrates the required, not optional, field values:

| Required Field Values | |
|---|---|
| Party 1 ID [22a] | Party 1 ID Type [22b] |
| Transaction Type [22c] | Transaction Amount [22d] |

'360 patent, Fig. 2.  Such presence of the minimum field values is important to the '360 patent because, otherwise, the Transaction Message is rejected.  *See id.* at 16:37-44.

---

[4] The specification and Figure 2 also refer to "Message session establishment/message headers" (*e.g.*, "1) identi[t]y of transaction-originating entity [21a and] provide a mechanism to authenticate it [21b]") as "minimum necessary contents" of the Transaction Message.  *Id.* at 15:61-16:4.  Those values, however, relate to the RTE (*e.g.*, the merchant website environment, *see id.* at 14:59-60) which is not expressly required by the asserted claims of the '360 patent.  Defendants therefore do not propose their inclusion as minimum required fields in the construction of "incoming information associated with a transaction."

Plaintiff's argument that Defendants are limiting the invention to a single embodiment misses the mark.  *See* Dkt. 148 at 20.  Defendants are not reading in limitations from the specification; rather, Defendants rely on the patentee's own lexicography that dictates the proper construction of the term.  *See Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 888 (Fed. Cir. 1984).  Defendants' proposed construction should be adopted.

### G.    "Device" ('271 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|----------------------|----------------------|
| device | "a physical apparatus, such as a mobile phone, known to be associated with an individual" | no construction needed / plain and ordinary meaning |

The term "device" is simply too broad not to construe. After all, a printer falls under the "plain and ordinary meaning" of "device," yet that could hardly be what the patentee intended.  Plaintiff's absence of a construction provides no guidance to the parties or a jury and does not address the parties' dispute over claim scope.  *Power–One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The terms, as construed by the court, must ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims.").

Conversely, Defendants' construction properly considers the claim term in light of the specification. *See Phillips*, 415 F.3d at 1313 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.") (citation omitted); *see also Indacon,* 2016 WL 3162043, at *3 ("We agree with Facebook that these terms have no plain or established meaning to one of ordinary skill in the art. As such, they ordinarily cannot be construed broader than the disclosure in the specification."). Indeed, Defendants' construction that a device is a physical apparatus

known to be associated with an individual comports with the specification of the '271 patent.  *See* '271 patent, 2:2 ("computer or other electronic device").

In its opening brief, Plaintiff argued that a "device" can be broader than just a physical apparatus because the specification purports to teach that term includes, for example, a web server or browser-based system or device.  *See* Dkt. 148 at 21-22.  But Plaintiff misstates the import of the intrinsic evidence.  A Web server is a physical apparatus, and the specification ***distinguishes*** a web-browser from the physical device on which the browser runs.  Specifically, when the specification refers to the browser, it discusses the User Web Client 25, which is a "web browser-based interface."  '271 patent, 38:46-51.  However, when the specification refers to a physical apparatus that is based on a web browser, the specification identifies a "browser-based system or device."  '271 patent, Table 10.  Nowhere does the specification suggest that the term "device" is so broad as to include anything used to communicate.  Rather, the specification uses the term to refer to a physical apparatus, consistent with normal usage of the term and Defendants' construction.

Finally, Plaintiff's reliance on extrinsic evidence is unavailing. As an initial matter, the references cited are not contemporaneous with the patent, and thus should not even be considered. *See Brookhill-Wilk*, 334 F.3d at 1299.  Even assuming that Plaintiff's dictionary websites are relevant, they merely prove Defendants' point that this term requires construction.  *See* Dkt. 148-27 (broadly defining "device" to include "an object, machine, or piece of equipment that has been made for some special purpose," "a weapon that explodes," and "something that is done in order to achieve a particular effect"); Dkt. 148-30 (broadly defining "device" to include, *inter alia*, "[a] thing made or adapted for a

particular purpose, especially a piece of mechanical or electronic equipment," "[a] bomb or other explosive weapon," "[t]he design or look of something," "[a] plan, scheme, or trick with a particular aim").

The Court should accept Defendants' proposed construction because it properly considers the language of the claims in the light of the specification.

### H.    "Identifying / Identify a Second Device Associated With the Account" ('271 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|----------------------|----------------------|
| identifying / identify a second device associated with the account | "selecting a second device based on information in the account, the information being specific to the device itself" | no construction needed / plain and ordinary meaning |

Plaintiff again refuses to provide a construction for a disputed term, and instead argues that no construction is needed or that plain and ordinary meaning is appropriate.[5] That completely ignores the patent's specification, is of no help to the jury, and only serves Plaintiff's objective of improperly broadening its patent. *See Indacon*, 2016 WL 3162043, at *3; *Power–One*, 599 F.3d at 1348; *O2 Micro*, 521 F.3d at 1362; *Phillips*, 415 F.3d at 1313, 1315.

Plaintiff argues without explanation or citation to ***any*** intrinsic evidence that Defendants' proposed construction is not within the plain and ordinary meaning.  But the claims specifically state that it is a ***device*** that must be identified, and the specification consistently draws a distinction between known/predefined devices and their corresponding addresses. *Accord* '271 patent, 10:54-65, 12:16-19, 20:5-30, 26:48-27:9, 32:51-55.  Said another way, the '271 patent uses the word "device" to refer to the

---

[5] Plaintiff's myriad and varied examples of extrinsic definitions for the separate words of this term prove Defendants' point: this term needs to be construed. And as discussed *supra*, the Court should not even consider these sources to begin with because they are not contemporaneous with the patent. *See Brookhill-Wilk 1*, 334 F.3d at 1299.

apparatus itself and "address" to refer to the way of communicating with the device. Because the patent uses these different words to mean different things, the term device in the claims cannot be broad enough to encompass the device's address.   Defendants' construction clarifies this limitation within the context of the patent's disclosure.

For example, the '271 patent distinguishes between "one or more predetermined communications ***devices and addresses***, such as telephone numbers or wireless SIP addresses" clarifying that "***device and address*** information are preferably defined and stored in advance in a non-volatile storage or database in the form of a profile associated with each such party."   *Id.* at 10:42-53.   The patent teaches that both pieces of information must be stored in a party's Communication Profile record so that the party's role can be determined "for the device media type, and address."   *Id.* at 26:48-65.   The patent further explains that confirming both the device and the address has advantages over other systems: "Communicating with and/or to said party or parties only on communications devices having specific predetermined communications addresses known to belong to them, as a mechanism of additional authentication and verification." *Id*. at 13:66-14:3.

Plaintiff's attempt to expand "plain and ordinary" meaning of "identifying a second device" to include, for example, calling a phone number ignores other claim limitations directed to transmitting to the second device, *e.g.*, '271 patent 39:15-17, and contradicts the intrinsic evidence that repeatedly distinguishes the device from the number (address).   Moreover, Plaintiff's "plain and ordinary" meaning collapses when applied to real-world situations.   For example, the system could send a verification message to a user's email address stored in the profile, but how is the claimed system

identifying a second *device* associated with the account when that email could be read on a user's mobile phone, laptop, work computer, internet café desktop, etc.?  The answer is clear—it cannot, and Plaintiff has no answers for its improper and expansive view of the "plain and ordinary" meaning for this term.

As such, in order to clarify that a device is distinct from an address associated with that device, the Court should accept Defendants' proposed construction because it properly considers the language of the claims in the light of the specification.

## I.      "[Over a] Network" ('271 patent)

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|---------------------|---------------------|
| [over a] network | indefinite under 35 U.S.C. § 112(b) | no construction needed / plain and ordinary meaning |

The term "[over a] network" is indefinite under 35 U.S.C. § 112(b) at least because it causes the '271 patent's claims to "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2123. For example, claim 1 uses the same term no less than three times: "receiving at a server, *over a network*, an account access request from a first device; … transmitting to the second device, *over a network*, a verification message associated with the account access request; receiving, *over a network*, a response related to the verification message." Yet it is completely unclear how many networks are in play; one, two, three? And whether the account access request, the verification message, and the response travel over the same or different networks is likewise opaque. Plaintiff's reliance on its expert's declaration (*see* Dkt. 148-1 at 10) is of no help, as it is entirely conclusory and fails to explain *how* the specification "inform[s], with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2123.

Because of the patentee's choice of claim terms, it is impossible for any entity to understand how to avoid potential infringement. This is anathema to the precision required of patents, which are required "to afford clear notice of what is claimed, thereby apprising the public of what is still open to them in a manner that avoids a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* (citations, internal quotations, and modifications omitted). Therefore the Court should find the claims invalid as indefinite.

**J.    "A Processor Configured to Identify a Second Device Associated With the Account " ('271 patent)**

| Term | Defendants' Proposal | Plaintiff's Proposal |
|------|---------------------|---------------------|
| a processor configured to identify a second device associated with the account | 35 U.S.C. § 112(f)<br><br>Function:<br>identify a second device associated with the account<br><br>Structure:<br>indefinite under 35 U.S.C. § 112(b) | no construction needed / plain and ordinary meaning |

The limitation "a processor configured to identify a second device associated with the account" is subject to § 112(f) for the same reasons as the "processor configured to verify …" limitation discussed above.  This is a purely functional limitation that covers any combination of hardware and software that performs the recited function, *see Net MoneyIN*, 545 F.3d at 1366, and neither the claims nor the specification defines any structural relationship between this claimed processor and the other components of the claimed system.  Accordingly, the term does not communicate a sufficiently definite meaning as the name for a structure, and § 112(f) applies.

Under  § 112(f),  the  specification  fails  to  set  forth  adequate  structure corresponding to the claimed function of "identifying a second device associated with the account," and the claim is therefore invalid under § 112(b).  The specification teaches

DAL:940713.1

that the claimed function is performed by the Central System, a generic computer.  '271 patent, 10:42-11:10; 16:1-16.  The specification therefore must disclose an algorithm for "identifying a second device associated with an account."  *Williamson*, 792 F.3d at 1352.

The '271 patent does not disclose such an algorithm.  Rather, the specification discloses that a Communications Control Layer of the Central System coordinates communications with multiple parties and multiple devices.  '271 patent, 26:28-27:16. More specifically, the patent explains that "communication devices, addresses, and media for the party" are grouped after searching the party's "Communication Profile record," but the patent does not disclose any algorithm for identifying the party's communication device.  *Id.* at 26:48-55.  The claim is therefore invalid under § 112(b).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court adopt their proposed constructions as set forth above.

Dated:  June 21, 2016                 Respectfully submitted,

By:   */s / Tonya M. Gray*          
          **ANDREWS KURTH LLP**

          Anthony Son
          AnthonySon@andrewskurth.com
          1350 I Street, NW
          Suite 1100
          Washington, DC  20005
          Telephone:  (202) 662-2784
          Facsimile:  (202) 974-9524

          Tonya M. Gray
          Texas Bar No. 24012726
          tonyagray@andrewskurth.com
          1717 Main Street, Suite 3700
          Dallas, Texas  75201
          Telephone: (214) 659-4400
          Facsimile:  (214) 659-4401

          **ATTORNEYS FOR DEFENDANT**
          **ZB, N.A. (F/K/A AMEGY BANK N.A.)**

*/s/ Stephen E. Baskin*
Stephen E. Baskin
Michael L. Lindinger
Dara M. Kurlancheek
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Tel: (202) 263-3364
Fax: (202) 263-3300
sbaskin@mayerbrown.com

Russell S. Jones, Jr.
Missouri State Bar No. 30814
rjones@polsinelli.com
Jay E. Heidrick
Missouri State Bar No. 54699
jheidrick@polsinelli.com
Richard P. Stitt
Kansas State Bar No. 14268
rstitt@polsinelli.com
POLSINELLI PC
900 W. 48th Place, Ste 900
Kansas City, MO 64112
Phone: 816-753-1000
Fax: 816-753-1536

Jason D. Mazingo
State Bar No. 24055925
Jason@MazingoFirm.com
THE MAZINGO FIRM, P.C.
305 South Broadway, Suite 404
Tyler, Texas 75702
Phone: 903.630.7123
Fax: 903.218.7849

Gil Gillam
GILLIAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257
gil@gillamsmithlaw.com

**ATTORNEYS FOR DEFENDANT
LEGACYTEXAS BANK**

DAL:940713.1

*/s/ Aaron G. Fountain*

John M Guaragna
Texas Bar No 24043308
DLA PIPER LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Tel: 512.457.7125
Fax: 512.457.7001
john.guaragna@dlapiper.com

Aaron G. Fountain
Texas Bar No. 24050619
**DLA Piper LLP (US)**
1000 Louisiana, Suite 2800
Houston, Texas  77002
Tel:  (713) 425-8445
Fax:  (713) 300-6045
aaron.fountain@dlapiper.com

Brian A. Biggs
Delaware Bar No. 005591
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Tel:  302.394.2341
Fax:  302.394.2341
brian.biggs@dlapiper.com

**ATTORNEYS FOR DEFENDANTS
SOUTHSIDE BANCSHARES, INC.,
SOUTHSIDE BANK, TEXAS CAPITAL
BANK, N.A., TEXAS CAPITAL
BANCSHARES, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on all counsel of record via Local Rule CV-5 on this the 21st day of June, 2016.

*/s/ Tonya M. Gray*

33